HEIRS OF KIMBALL *vs.* HEIRS OF LOPEZ.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE OF THE EIGHTH PRESIDING.

KIMBALL'S HEIRS
*vs.*
LOPEZ'S HEIRS.

When the record does not furnish a certificate, either by the judge or clerk, that it contains all the evidence on which the cause was tried, nor a statement of facts, the cause cannot be examined on its merits, but the court will decide on the questions of law, presented by the bills of exception in the record.

A sheriff cannot be called as witness, to prove what proceedings took place, at a certain sale made by him, when the return made on the execution is silent, or stated that the execution had been stayed, by order of the District Court.

Parole evidence is inadmissible, to supply defects in the sheriff's return of proceedings under an execution, or where it contradicts the official return of the officer.

The plaintiffs sue as the heirs and legal representatives of Esther McD. Kimball, to recover a slave named Peter, worth eight hundred dollars, who they allege, is illegally in the possession of the defendant's ancestor. This suit was filed the 13th May, 1826, and on the 20th, in pursuance of the prayer of the petition, the negro was sequestered. The plaintiffs set up title to the slave in contest.

The defendant pleaded a general denial, and excepted to answering the petition, because a copy in the French language was not served on him; on the merits, he says he purchased the slave in question, of one John Sands, in 1815, by an act under private signature, which is annexed; and that Sands purchased him at sheriff's sale, the 11th of July, 1814, as appears by the deputy sheriff's bill of sale, of that date: He pleads the prescription of ten years, and calls John Sands, his vendor, in warranty, and in the event of eviction, he prays judgment against his warrantor, for the value of the slave, and costs.

Sands answered to the call in warranty. He states he purchased the slave Peter, at sheriff's sale, for the parish of

East Baton Rouge, when a boy of about thirteen years of age; that Lopez proposed to take him, for the price at which he was bid off, and be substituted to him as the purchaser, to which he consented, and the defendant took possession, and has continued to possess said slave ever since; that shortly after the inception of this suit, he was induced, at the instance of Mr. Lopez, to sign an act of sale of Peter to him, and that the latter stated at the time, he had no intention or wish to render him liable, in consequence of signing it, but wanted it, and had it dated back to the 25th February, 1825, to enable him to resist this suit; that since this transaction Lopez has died, but his heirs and representatives are well acquainted with the facts, and this effort by them to call him in warranty, is illegal and fraudulent; that the plaintiffs have no right to recover, as the slave was legally sold, and purchased in good faith, by this respondent, in the manner he has alleged.

The testimony shows, that Esther McD. Kimball was the wife of Wm. Williams, that in 1809 she and her brother Benjamin Kimball, signed an obligation to pay one David B. Stewart, four hundred and thirty-six dollars; that after the death of Williams, his wife married John Cammack. In 1814, judgment was obtained on the above obligation, against the estate of B. Kimball and Esther McD. Cammack, after her second marriage. The negro Peter, then a boy, was given up to Cammack and wife, sold under execution to satisfy the judgment of Stewart, and purchased by John Sands, the warrantor.

*Kelly,* a witness for plaintiff, states that he knows the negro Peter, and that he was born the property of William Williams, the first husband of Esther McD. Kimball, the mother of plaintiffs. His mother's name was Sucky, and was derived from the estate of Frederick Kimball, as part of William Williams's wife's estate, which she inherited from her father.

*Dorothy Wells* knew the slave Peter, from his birth until 1812. He was the property of Mrs. Williams, the mother of plaintiffs. She received his mother from her father's estate.

The defendant offered in evidence, the sheriff's deed of the sale of Peter, to John Sands, which was objected to by the plaintiffs' counsel, on the ground, that it did not appear to be returned and recorded in the clerk's office, and because the judgment and execution, in virtue of which the sale was made, had not been previously shown by him; the court admitted the document in evidence as sufficient, upon which to found the plea of prescription. The plaintiffs' counsel took his bill of exceptions to the opinion of the court.

The defendant, after the other evidence had been produced, and the testimony gone through on both sides, offered the record of the judgment and execution of Stewart *vs.* Kimball et als., under which the slave in contest was sold, which was objected and excepted to by the plaintiffs' counsel, as coming too late, but was admitted.

The district judge considered the plaintiffs failed to make out their case, and gave judgment for the defendants, from which, after an unsuccessful motion for a new trial, the plaintiffs appealed.

*Turner*, for the plaintiffs.

*R. & A. N. Ogden*, for the defendants.

*Bullard, J.*, delivered the opinion of the court.

The plaintiffs sue to recover a slave, which they claim as the property of their ancestors, in the possession of the defendants. The defendants plead title derived from one Sands, who was cited in warranty, and whose title exhibited is a sheriff's deed, and the defendants further rely on prescription.

The transcript of the record does not furnish us a certificate either by the judge or the clerk, that it contains all the evidence on which the cause was tried in the court below, nor a statement of facts. We cannot, therefore, examine the case on its merits, but confine our attention to the questions of law, presented on the bill of exceptions in the record.

In the progress of the trial, it appears that T. C. Stannard, was examined as a witness to prove, what proceedings took

When the record does not furnish a certificate either by the judge or clerk, that it contains all the evidence on which the cause was tried, nor a statement of facts, the case cannot be examined on its merits; but the court will decide on the questions of law presented by the bills of exception in the record.

A sheriff cannot be called as

WESTERN DIST. *August,* 1834.

KIMBALL'S HEIRS *vs.* LOPEZ'S HEIRS.

*witness to prove what proceedings took place at a certain sale made by him, when the return made on the execution is silent, or stated that the execution had been stayed by order of the District Court.*

*Parole evidence is inadmissible to supply defects in the sheriff's return of proceedings under an execution, or where it contradicts the official return of the officer.*

place in execution of a *fieri facias,* by virtue of which the slave in question was sold. He had acted as deputy sheriff, and the return on the execution was silent as to the sale, and indeed, stated that the execution had been stayed by order of the District Court. His testimony was objected to, and a bill of exceptions taken to its admission by the court. The court was clearly in error. The testimony went directly to contradict the official returns of the officer, and to supply a defect in the proceedings which can only be done by record evidence. Parole evidence is, in our opinion inadmissible to supply so important a link in the chain of titles, as the adjudication of the property by the sheriff.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed, that the case be remanded for a new trial, with directions to the district judge, not to admit parole evidence to contradict the return of the sheriff, nor to prove the adjudication of the property, and that the defendants pay the costs of the appeal.